| | |
|---|---|
| St. Panteleimon Russian Orthodox Church, | Civ. No. 13-1977 (SRN/JJK) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Church Mutual Insurance Company, | |
| Defendant. | |

Brendan R. Tupa, Esq., Udoibok, Tupa & Hussey, PLLP, counsel for Plaintiff.

R. Henry Pfutzenreuter, Esq., and Christan A. Preus, Esq., Meagher & Geer, PLLP, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

**INTRODUCTION**

This case involves an insurance dispute between St. Panteleimon Russian Orthodox Church (the "Church") and Defendant Church Mutual Insurance Company ("CMIC"), which insures against certain damage to the Church's property. After a wind and hail storm damaged the Church's property, the Church sought coverage under the policy, and CMIC responded in a manner that the Church felt was inconsistent with the insurance policy. Now, in its Motion to Compel Appraisal and Stay Court Proceedings (Doc. No. 10), the Church asks the Court to issue an order requiring CMIC to submit to an appraisal process that the Church claims is required by the policy's terms. The Church also asks us to

stay these proceedings until the conclusion of that appraisal process.  CMIC, on the other hand, believes that an appraisal is not appropriate under the terms of the policy or under Minnesota law.

Before discussing the facts and law that govern this motion, we address the nature of the relief that the Church is seeking both in its motion and in the case.  The real gist of this action is that the Church alleges that CMIC has caused the Church significant contractual monetary damages by failing to pay a sufficient amount to cover the Church's losses.  (Doc. No. 1, Compl. ¶¶ 25, 32, 34, 37; *id.*, Prayer for Relief ¶¶ A–B.)  However, in its Complaint, the Church also asks the Court to declare that CMIC was required under the policy to participate in an appraisal, and it asserts that CMIC breached the insurance policy, in part, by failing to participate in an appraisal.  (Compl., Counts One and Two.)  Stated differently, CMIC's refusal to go to an appraisal is a part of both the Church's declaratory judgment claim (*Id.* ¶¶ 25, 27, 29), and its breach of contract claim (*See* Compl. ¶ 34).  And in its Prayer for Relief, the Church specifically seeks an order compelling CMIC "to participate in an appraisal of the amount of loss with the Church[.]"  (Compl., Prayer for Relief ¶ G.)  Thus, by asking in this motion that the Court compel an appraisal and stay this case until that appraisal is complete, the Church seeks a ruling on the merits of a portion of its declaratory judgment and breach of contract claims, and the Church asks the Court to grant a specific form of relief that it prays for in its Complaint.  As a result, the motion to compel an appraisal is dispositive, *Natureview Vista Townhome Assoc. v. The*

2

*Phoenix Ins. Co.*, Civ. No. 09-1893 (RHK/JJK), Doc. No. 50 at 2 (D. Minn. Jan. 12, 2011), and the District Court has referred the motion to this Court for a Report and Recommendation under 28 U.S.C. § 636. (Doc. No. 17.)

The Court held a hearing on the Church's motion on October 29, 2013, and prior to the hearing, this Court informed the parties that it would be treating the motion as one for partial summary judgment and offered the parties an opportunity to submit any further briefing they believed was necessary. (E-mail from the Court to All Counsel (Oct. 28, 2013, 14:50 CST) (on file with the Court).) The parties confirmed that the motion could be submitted on the record without further briefing. (E-mail from Brendan Tupa to the Court (Oct. 28, 2013 16:32 CST) (on file with the Court).) For the reasons that follow, this Court recommends that the Church's motion be denied.

## FACTS

On March 19, 2012, a wind storm damaged the onion domes sitting atop the Church's roof. (Doc. No. 1, Compl. ¶ 12.) According to the Church, the storm also caused damage to "the roofing deck, church interior, damages associated with the costs of clean up and debris removal as well as compliance with local ordinances and building codes for the repairs, and other items covered under the policy." (Compl. ¶ 15.) The Church submitted a claim to CMIC, but according to the Church, CMIC offered and paid sums in resolution of portions of the claim that were insufficient to cover the loss the Church was claiming to have sustained. (Compl. ¶ 16.) Specifically, CMIC paid $59,281.76 to the Church and

United Exteriors, a contractor the Church engaged to evaluate the process for making repairs.[1] (*See* Doc. No. 13, Aff. of Brendan E. Tupa ("Tupa Aff.") ¶ 2, Ex. E (letter from CMIC to the Church concerning the Church's claim).)

Unsatisfied with CMIC's response, on May 7, 2013, the Church demanded that CMIC submit to an appraisal to determine the "amount of loss," which, according to the Church, CMIC was required to do under the policy. (Tupa Aff. ¶ 2, Ex. A, Appraisal Demand.) Along with the Appraisal Demand, the Church provided a Sworn Statement of Proof of Loss for the damages relating to the March 19, 2012 storm. (Tupa Aff. ¶ 2, Ex. C.) In the Proof of Loss Statement, the Church asserted that the policy limits, the full replacement cost of the property at the time of loss, the actual cash value of the property at the time of loss, and the whole loss and damage to the described property as a result of the storm was $1,046,500. (*Id.*) The Church also asserted in the Proof of Loss Statement that it was claiming $1,046,500 from CMIC. (*Id.*) In essence, the Church filled out each portion of the CMIC Proof of Loss form by writing in the full policy limits.

The policy itself provides for an appraisal when there is a dispute as to the "amount of loss," specifically: "[i]f [CMIC] and [the Church] disagree on the value of the property or the amount of loss, either may make written demand for an

---

[1] Eventually, CMIC's total estimated cost of repairs to the Church's property as a result of the storm was $77,633.81. (Doc. No. 16, Aff. of Jim R. Bednarski ("Bednarski Aff.") ¶ 13, Ex. 13.)

4

appraisal of the loss." (Bednarski Aff. ¶ 1, Ex. 1, Policy, Property Conditions ¶ 3.b.)  The policy also imposes certain obligations on the Church in the event of loss or damage.  For example, the Church must provide a proof of loss as follows: "in the event of loss or damage . . . [the Church must] [s]end [CMIC] a signed, sworn proof of loss containing the information we request to investigate the claim . . . ." (*Id.* ¶ 1, Ex. 1, Policy, Property Conditions ¶ 3.c(1)(g)).  Similarly, in the event of loss or damage to the covered property, the Church must also, at CMIC's request, "give [CMIC] complete inventories of the damaged and undamaged property[, and] [i]nclude quantities, costs, values, and amount of loss claimed." (*Id.* ¶ 1, Ex. 1, Policy, Property Conditions ¶ 3.c(1)(e).)

After it received the Church's Appraisal Demand and Proof of Loss Statement, on May 22, 2013, CMIC rejected the Church's request for an appraisal, explaining that it believed the Church provided no information supporting its Proof of Loss Statement's assertion that the damage caused to the Church's property reached the policy limits.  (Tupa Aff. ¶ 2, Ex. E.)  Focusing on the Church's inclusion of the policy limits throughout its Proof of Loss Statement, CMIC told the Church that such a Proof of Loss was "not sufficient" to trigger the appraisal process.  (*Id.* ¶ 2, Ex. E at 2.)  CMIC also told the Church that, under the policy, to trigger the appraisal provision, "[i]t is necessary for [the Church] to submit a legitimate proof of loss that states what it claims is the amount of damage or loss that the church incurred as a result of the March 19, 2012 wind storm.  It is also necessary for [the Church] to supply an explanation and

5

justification along with appropriate supporting documentation." (Tupa Aff. ¶ 2, Ex. E at 2.)

On June 6, 2013, the Church responded to CMIC's rejection of the Proof of Loss and refusal to submit to an appraisal. (Tupa Aff. ¶ 2, Ex. F.) In this response, the Church claimed that the Proof of Loss Statement asserted "a loss up to $1,046,500, which the appraisal panel will determine the exact cost of the loss up to the limits of the policy." (*Id.*) The Church also asserted that "[d]ocuments consisting of numerous invoices and estimates have been previously submitted to [CMIC's] representative," and requested again that CMIC submit to an appraisal. (*Id.*)

On June 24, 2013, Father Antony Alekseyenko participated in an examination under oath that CMIC requested to discuss the damage to the Church caused by the March 2012 storm. (Bednarski Aff. ¶ 14, Ex. 14, Tr.) During that examination, Father Alekseyenko repeated the Church's position that it was "asking for appraisal and [its claim was] up to the amounts of the policy [limits]." (*Id.* ¶ 14, Ex. 14, Tr. 17:21–25; *see also id.* at 21:3–20.) At that time, Father Aleksyenko could not confirm what documents the contractor at United Exteriors had submitted to CMIC's appraiser concerning the Church's claim. (*Id.* at 23:9–25:1.)

6

# DISCUSSION

## I. Standard of Review

As mentioned above, the Church's declaratory judgment and breach of contract claims assert that CMIC was bound by the terms of the insurance agreement and that under the circumstances the Church is entitled to the remedy of an insurance appraisal. Because, in its motion, the Church is asking us to issue an order requiring CMIC to participate in an appraisal, it is essentially seeking partial summary judgment on its claim that it had the right under the insurance policy to an appraisal to determine the amount of loss and requesting that it be granted the remedy of specific performance of the contract's appraisal provision. *Cf. Shukh v. Seagate*, Civ. No. 10-404 (JRT/JJK), 2011 WL 6003951, at *3, 6 (Nov. 30, 2011) (noting that while some Minnesota courts require a showing of damages on a breach of contract claim, others indicate that specific performance may be requested in lieu of damages, and ordering, on summary judgment, specific performance of a contract in the form of requiring the defendant to return certain relevant documents); 20 Minn. Practice, Business Law Deskbook § 7:46 (2013) ("Specific performance is an order by the court that a contract be fully performed according to its terms."); *see also La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332, 1334–35 (S.D. Fla. 2010) (dismissing a claim for specific performance of an appraisal provision where the defendant-counterclaimant failed to plead sufficient facts showing that

it was entitled to a present right to appraisal under the insurance contract under Florida law).

Thus, this Court will analyze the Church's motion to compel an appraisal as one seeking summary judgment on its claim that CMIC breached its obligations under the insurance policy and requesting that CMIC be ordered to specifically perform the parties' contract's appraisal provision. Under Minnesota law, which we must apply in this diversity action, a breach of contract claim requires the plaintiff to prove that: (1) an agreement was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract. *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). Unambiguous contract terms must be given their plain and ordinary meaning. *Litton Microwave Cooking Prods. v. Leviton Mfg. Co.*, 15 F.3d 790, 796 (8th Cir. 1994) (citing *Hudred v. Control Data Corp.*, 442 N.W.2d 308, 310–11 (Minn. 1989)). When determining the meaning of a contract, Minnesota courts "must construe the contract as a whole and attempt to harmonize all clauses of the contract." *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, 44 F.3d 629, 636 (8th Cir. 1994) (citing *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990)).

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the

nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009); *Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322; *Whisenhunt v. Sw. Bell Tel.*, 573 F.3d 565, 568 (8th Cir. 2009).  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  In other words, a party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247–49).

## II.  Analysis

The parties disagree about whether CMIC was required under the policy to participate in an appraisal.  The Church contends that it is entitled to an appraisal

9

because the parties have a dispute as to the "amount of loss." The Church argues that a dispute as to the amount of loss exists because there is no disagreement that the March 19, 2012 storm is a covered cause of loss under the policy. Thus, the Church asserts that because the storm was a covered cause of loss, and the parties disagree on how much CMIC must pay for that loss under the policy, there is a dispute as to the amount of loss and CMIC must submit to the appraisal process. (Doc. No. 12, Pl.'s Mem. in Supp. of Mot. to Compel Appraisal and Stay Court Proceedings ("Pl.'s Mem.") 5–7.) The Church asks the Court to declare, on the record before it, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on its claim that CMIC is in breach of the policy by having refused to submit to an appraisal. In response, CMIC contends that it was not required to participate in an appraisal because the appraisal provision was not properly triggered. (*See* Doc. No. 15, Def.'s Mem. of Law in Opp'n to Mot. to Compel Appraisal and Stay Court Proceedings 8–11.) CMIC contends that for the appraisal provision to be properly invoked under the policy, the Church must satisfy certain conditions in the policy, including the Church's obligation to provide complete information, including a supported proof of loss. (*See id.* at 10.)

In determining whether CMIC has breached the appraisal term in the policy, we must first determine what the terms of the policy require, and in construing a disputed contract term, we look to the contract as a whole. *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 237 N.W.2d 76, 78 (1975). In

10

relevant part, the appraisal provision is only triggered when the Church and CMIC "disagree on . . . the amount of loss." (Bednarski Aff. ¶ 1, Ex. 1, Policy, Property Conditions ¶ 3.b.)  And the right under the policy to start the appraisal process is contingent upon a disagreement as to the amount of loss.  (*Id.* ("*If we and you disagree* on . . . the amount of loss, either may make written demand for an appraisal of the loss.") (emphasis added).)  The contract does not specifically define when the insured and insurer "disagree on . . . the amount of loss," but "amount of loss" is used elsewhere in the policy.  Specifically, where the policy discusses the Church's duties in the event of loss or damage, it provides that the Church must "give [CMIC] complete inventories of the damaged and undamaged property[, and] [i]nclude quantities, costs, values, and amount of loss claimed" when the Church requests this information.  (Bednarski Aff. ¶ 3.c(1)(e).)

Reading these two provisions together and in light of the contract as a whole, the appraisal provision plainly requires the Church to satisfy its obligation to provide information supporting its claim and the amount of loss claimed before there can be a "disagree[ment] on . . . the amount of loss" sufficient to trigger the appraisal process.  When there is an event of loss or damage to the covered property, the Church must provide the information discussed in ¶ 3.c(1)(e) of the policy, including the amount of loss claimed, if CMIC requests it.  Further, when CMIC makes a request for that information, the Church must provide it before the parties can "disagree on . . . the amount of loss" to trigger the appraisal provision.  This is a logical reading of the way the appraisal provision works in concert with

11

the Church's obligations in the event of loss or damage. This gives CMIC a chance to review the basis for the Church's claim, and it allows CMIC determine whether to pay the amount of loss that the Church claims to have suffered. If, after CMIC receives supporting documentation that it requests, CMIC's evaluation of the amount of loss differs from the Church's claimed amount of loss, then either party may demand an appraisal and the process is properly triggered.

Therefore, this Court rejects the Church's alternative reading of the agreement. Essentially, the Church's position on this motion is that it was entitled to an appraisal because CMIC offered amounts less than the full policy limits to resolve the Church's claim. Under the Church's rationale, an insured would be entitled under this policy to invoke the appraisal process any time an event of loss or damage occurred to the covered property without ever disclosing the contours of the insured's own claim, or even informing CMIC what the amount of loss claimed is. No disagreement on the amount of loss could occur under such a reading of the contract because the insurer would have no idea what it was being asked to pay for or how much it was being asked to pay. All the insurer would know was that the insured believed that the loss was at least the amount of the policy limits without any specificity of the proof of loss. This is not a reasonable interpretation of the appraisal provision. Moreover, the Church's interpretation would render the provisions of the policy establishing the Church's duties in the event of a loss or damage meaningless, a result contrary

to rules of contract interpretation. *See Metropo. Airports Comm'n v. Noble*, 763 N.W.2d 639, 645 (Minn. 2009) ("[W]e are bound by a rule of contract interpretation that requires us to give effect to all of a contract's terms.").

Thus, having determined what is required to trigger the appraisal process under the policy in circumstances such as these, this Court turns to whether the Church is entitled to summary judgment on its claim that CMIC breached the contract by refusing to participate in an appraisal when it was required to do so. This Court concludes that the Church is not entitled to summary judgment on this claim because there are genuine fact issues with respect to whether CMIC committed any breach. Most notably, there is a fact question whether a "disagree[ment] on . . . the amount of loss" ever occurred that was sufficient to trigger the appraisal provision. After the Church submitted its claim, and throughout the months leading up to the filing of this lawsuit, CMIC repeatedly asked the Church in correspondence and during the examination under oath what the actual amount of loss claimed by the Church was. CMIC also asked for documentation and other information to substantiate the nature of that claim. As a result of CMIC's requests, the policy required the Church to provide the requested information under the provisions outlining the Church's duties in the event of a loss or damage. Indeed, two days after the Church submitted its Appraisal Demand, in a May 9, 2013 letter, CMIC pointed out the Church's duty to provide this information before CMIC would be required to participate in an appraisal, asking the Church to provide documentation for the claimed amounts,

including invoices and receipts for covered damages and work performed. (Tupa Aff. ¶ 2, Ex. B at 1.) Although the record suggests that the Church believed it provided the necessary information to CMIC's adjuster VeriClaim, through the Church's contractor with United Exteriors (Tupa Aff. ¶ 2, Ex. F), it is unclear what information was ever provided to CMIC's representative. Indeed, the Church's representative, Father Aleseyenko, could not identify any specific documents that the United Exteriors contractor had provided to CMIC, and the Church has identified none in its motion. Thus, we cannot determine whether the Church provided sufficient information about the claim to create the conditions where a disagreement on the amount of loss could even occur.[2] On summary judgment, when we must take all inferences in favor of CMIC as the non-moving party, we cannot say on this record that there is no genuine issue of material fact that the appraisal process was properly triggered, and we cannot say that the Church is entitled to judgment as a matter of law on its claim that CMIC breached the contract by failing to submit to an appraisal.

Based on the foregoing, the Church's motion to compel and appraisal must be denied.[3]

---

[2] Even today, several months after the Church filed suit and moved to compel an appraisal, it remains unclear what the parameters of the Church's claim are.

[3] The Church relies primarily on *Quade v. Secura Ins.*, 814 N.W.2d 703 (Minn. 2012). In *Quade*, the Minnesota Supreme Court determined that a term in a Minnesota insurance contract permitting either party to demand an appraisal of
(Footnote Continued on Following Page)

# RECOMMENDATION

Based on the foregoing, and on all the records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Church's Motion to Compel Appraisal and Stay Court Proceedings (Doc. No. 10), be **DENIED.**


Date: November 12, 2013

                                       *s/ Jeffrey J. Keyes*
                                       JEFFREY J. KEYES
                                       United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 26, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

---

(Footnote Continued from Previous Page)
the "amount of loss" involved in an insured's claim necessarily involves questions of causation. *Id.* at 707. The court explained that even where an insurer believes that some of the loss that the insured is claiming under the policy is the result of an uncovered event, such as normal wear and tear, an appraisal process can appropriately assign what portion of the claimed loss is due to an event, such as a wind storm, and what portion of the claimed loss would not be recoverable. *Id.* However, *Quade* is inapposite to the circumstances presented on the record submitted by the parties. A key distinction between the situation in *Quade* and the one before the Court now is that in *Quade* there was no indication that the insured had failed to provide information about the nature of its claim under the policy to the insurer.

15

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.